IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| **Heline Chambers**,         ) | Civil Action No. 2:11-cv-0261-RMG-BM |
| ) | |
| Plaintiff     ) | |
| ) | |
| vs.           ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| **Medical University Hospital**   ) | |
| **Authority**,      ) | |
| ) | |
| Defendant.  ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to the Americans With Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964 (Title VII), as well as some state law causes of action. Plaintiff is a former employee of the Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on January 31, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court, advising Plaintiff of the importance of a dispositive motion and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending her case. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on April 16, 2012, following which the Defendant filed a reply memorandum on May 3, 2012.



The Defendant's motion is now before the Court for disposition.[1]

### Background and Evidence[2]

Plaintiff alleges in her Verified Complaint[3] that she is an African American female over the age of forty "who has a disability". Plaintiff alleges that she began working for the Defendant on August 29, 1996, and that at the time of her termination in March 2010 she was working as a pharmacy technician assigned to the hospital pharmacy.

Plaintiff alleges that she began to endure "negative employment events" beginning in early 2006, when she was assigned a new supervisor, Matthew Maughan (a white male). Plaintiff alleges that Maughan made negative comments about her religious beliefs, and "instituted policies via email knowing that Plaintiff did not have access to the same given her work schedule." Plaintiff alleges that prior supervisors had both emailed relevant material to employees *and* had them posted. Plaintiff alleges that she was then disciplined for not following changes of which she had no knowledge, while similarly situated white colleagues were not disciplined for their lack of access to

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



email. Plaintiff alleges that Maughan was aware that she did not have access to email, but declined to post information and singled Plaintiff out for discipline.

Plaintiff further alleges that the Defendant, including Plaintiff's supervisors, were "on notice of Plaintiff's health conditions and her need for accommodation by assignment to the night shift, which involved less walking." Plaintiff alleges that, notwithstanding this need for accommodation, Maughan reassigned her to the day shift, where her condition and disability worsened, forcing her to miss time from work and to seek medical treatment. Plaintiff alleges that she specifically advised Maughan of her disability and of the need for her accommodation, which was denied. Plaintiff further alleges that there was no good faith business reason for Plaintiff's reassignment, that in fact Maughan had to set up a rotation to fill the night shift since other employees also desired the day shift, and that eventually the night shift was given to a younger, less qualified white male.

Plaintiff alleges that, in addition to her preexisting conditions, she sought time off intermittently (including sick leave and FMLA leave) for various reasons from 2006 to the time of her termination. Plaintiff alleges that, in doing so, she routinely provided a doctor's note indicating that she required time off. Plaintiff alleges, however, that Maughan denied her leave even though she had adequate leave time; subjected her to comments intended to denigrate female workers and indicate that they were not reliable (such as that "men did not have to call out like females did for baby stuff and female operations"); subjected her to sarcasm and comments that suggested that she did not in fact have health problems or a disability as well as calling her friends, coworkers and pastor to "check if she was ill"; inferred that her religious beliefs were not genuine; and intimated in July 2009 that if Plaintiff "could volunteer to drive to Columbia to pick up a critically needed drug from



3

the pharmacy that she could not truly be disabled." Plaintiff further alleges that a similar situated younger white male employee was granted time off under the same or similar circumstances during the relevant time period.

Plaintiff also alleges that when she was working the night shift Maughan would deprive her of additional differential pay and for time worked during breaks and meal time, even though she could not take breaks on night shift as there was no relief to cover her. Plaintiff alleges that Maughan "upon information and belief" harassed and disciplined her for failure to take breaks in violation of the break policy, even though other similarly situated individuals were not disciplined.

Plaintiff alleges that when she sought accommodation with the Defendant she was involuntarily put on FMLA leave. Plaintiff further alleges that when she utilized the Defendant's complaint system to put the Defendant on notice of the discriminatory treatment occurring at the hands of her supervisor, she began to incur increased scrutiny and harsher discipline than coworkers in retaliation for using the EEO system and for complaining about her supervisor's actions. Plaintiff specifically alleges that she was required to perform additional duties that she had not had to perform for years due to her medical condition, including lifting, that she was placed involuntarily on FMLA leave at the end of 2009, and was then summarily terminated at the expiration of her FMLA leave.

Plaintiff alleges that she timely filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC) in May 2009, and that she received the required Notice of Right to Sue on July 27, 2010. Plaintiff then filed this lawsuit alleging causes of action for hostile work environment (Count One); sex, race, religious, age and disability discrimination (Count Two); retaliation for having engaged in protected conduct (Count Three); breach of contract/wrongful discharge (Count Four); violation of



4

the ADA and FMLA (Count Six)[4], and age discrimination (Count Seven). Plaintiff seeks monetary damages. See generally, Plaintiff's Verified Complaint.

In support of summary judgment in the case, the Defendant Matthew Maughan has submitted an affidavit wherein he attests that he was formally the Children's Hospital Pharmacy Manager for the Defendant, and that he served in that position for part of the time that Plaintiff was employed as a pharmacy technician, in particular 2007-2009. Maughan attests that, as manager of the pharmacy, he was responsible for the management and oversight of all pharmacy operations, including issues related to personnel.

Maughan attests that in the fall of 2008, the Defendant, as well as other state agencies, were required to review their personnel practices and reduce waste and inefficiencies, and that as part of this process he became aware that hourly employees, including the Plaintiff, were regularly working through their designated lunch period, often resulting in overtime pay being earned. Maughan attests that, in light of this finding, all employees were instructed during a meeting on or about September 29, 2008, that each was required to comply with applicable policies relating to lunch periods and overtime. Further, after this meeting a followup email was sent to all employees, including the Plaintiff, noting the issues addressed in the meeting. See also, attached Exhibit A to Maughan Affidavit [email]. Maughan attests that he then subsequently became aware that Plaintiff continued to not take a lunch/dinner break during the night shift, thereby receiving overtime pay for the period of time that she should have been on her required lunch/dinner break.

---

[4]Plaintiff's Count Five alleged a violation of 42 U.S.C. § 1981. However, that cause of action was dismissed by Order of the Court filed June 28, 2011.



5

Maughan attests that on Friday, January 23, 2009, he personally met with the Plaintiff about the lunch and overtime issue, which he thereafter documented with a memorandum of that same date. See also, attached Exhibit B to Maughan Affidavit [Memorandum]. Maughan attests that the Defendant paid Plaintiff for all of the overtime she had worked, even though she had performed the overtime work in violation of policy and his directive. However, Maughan also issued Plaintiff a written reprimand on or about March 12, 2009 about her failure to follow policy and his directive; specifically, the lunch and overtime policy. See also, attached Exhibit C to Maughan Affidavit [Copy of Disciplinary Report].

Maughan attests that in March 2009 he requested information about the general performance of night shift pharmacy technicians, which included the Plaintiff. Maughan attests that Plaintiff's performance was reported to be significantly lacking in a number of areas; for example, while other employees on Plaintiff's shift were able to complete their assigned tasks without working through their lunch-dinner break, Plaintiff could not do so. Plaintiff also experienced inefficiencies related to her performance of hourly rounds, and an unreasonable amount of work was reportedly shifted to the shift pharmacist when Plaintiff was working. Maughan attests that, as a result of observations of her performance by both himself and others, he moved Plaintiff to the day shift so that she could be more closely supervised, assessed and monitored. Maughan attests that he informed Plaintiff of this move both in person and by email on or about April 9, 2009, with her move to the day shift to be effective beginning April 27, 2009. Maughan attests that, thereafter, on or about May 7, 2009, he along with Scott Loveland issued a joint memorandum to the Plaintiff regarding her work performance over the preceding several months, addressing her move to the day shift, and providing



her with specific information about how she could address any concerns or complaints she harbored about her employment. See also, attached Exhibit D to Maughan Affidavit [Joint Memorandum].

Maughan attests that none of the actions he took regarding the Plaintiff and/or her employment were related to her gender, race, religion, age and/or any disability or related impairment claimed, nor were these actions related to any complaint, formal or informal, Plaintiff may have made about him, other employees, or the Defendant in general. See generally, Maughan Affidavit, with attached exhibits.

In further support of its motion for summary judgment, the Defendant has submitted a copy of Plaintiff's deposition (Defendant's Exhibit A), a copy of a letter authored by the Plaintiff on December 29, 2009 addressing the Defendant's dress code (Exhibit B), a copy of an Employee Evaluation from November 2007 (Exhibit C), a copy of a Memorandum authored by the Plaintiff dated January 20, 2009 addressing various claims of mistreatment by her supervisor (Exhibit E)[5], a copy of an employee evaluation from February 2009 (Exhibit F), a copy of a Compliance Report dated May 5, 2009 (Exhibit G), a copy of Plaintiff's Charge of Discrimination filed with SCHAC on May 5, 2009 (Exhibit H), a letter to the Plaintiff from Brett Crisp dated December 17, 2009, and followup letters from January 12, 2010 and February 22, 2010 (Exhibit I), a letter to the Plaintiff from Maughan dated March 31, 2010 (Exhibit J), a copy of a Functional Capacity Evaluation of the Plaintiff dated April 16, 2010 (Exhibit K), a copy of the South Carolina Retirement Systems Notice of Retirement Eligibility and Estimated Benefit for the Plaintiff dated August 27, 2010 (Exhibit L), and a copy of a Long Term Disability Benefit Employee's Statement completed by the Plaintiff on April 20, 2010 (Exhibit M).

---

[5]Maughan's affidavit is Exhibit D.



Although Plaintiff cites to many of the Defendant's exhibits in making her arguments against summary judgment in the response she filed in opposition to that motion, she has not herself submitted any evidence or exhibits to the Court for consideration.

**Discussion**

The Defendant has moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Additionally, the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case; see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); and as the Plaintiff is proceeding pro se, her pleadings are considered pursuant to this liberal standard. However, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990).



8

# I.

## (Whether Some or All of Plaintiff's Claims are Statutorily Barred)

With respect to Plaintiff's claims of race, gender or religious discrimination under Title VII, disability discrimination under the ADA and/or the FMLA, and age discrimination under the ADEA, Defendants argue that Plaintiff is limited in this lawsuit to asserting the claims she asserted in her administrative charge, and that to the extent her claims exceed those set forth in her administrative charge, those additional claims are barred from consideration by this Court. See Smith v. First Union National Bank, 202 F.3d 234, 247 (4th Cir. 2000) [EEOC charge "defines the scope of [a plaintiff's] subsequent right to institute a civil suit"].

In her charge of discrimination filed May 5, 2009, Plaintiff asserted claims for race, sex, religion, age, and disability discrimination, as well as for unlawful retaliation. Specifically, Plaintiff alleged 1) that she was subjected to disparate terms and conditions of employment from on or about December 2006 through April 20, 2009; 2) that she was denied equal wages from November 2008 through January 2009; 3) that she was unfairly or improperly disciplined on or about March 12, 2009; 4) that she was denied a reasonable accommodation for her disability on or about April 8, 2008; and 5) that she was involuntarily transferred from midnight shift to day shift on or about April 8, 2009. Plaintiff's administrative claims included that she was not allowed time off after she suffered an injury while a similarly situated, younger while male was allowed time off after an injury; that she was threatened and harassed by Maughan, to include negative comments about her religious beliefs; that she was improperly denied pay for time she worked during breaks and lunch even though white employees "were not treated this way"; and that Maughan failed to notify her about the change in the "no break" policy by providing her with a hard copy of this instruction, even though he knew that her



9

work schedule did not permit her time to check emails. With respect to her medical condition, plaintiff asserted in her administrative charge that Maughan knew that the day shift required more walking than she was able to do, and that Maughan changed her shift in order to force her to quit her job. Plaintiff further asserted in her administrative charge that she was involuntarily transferred from the night shift to the day shift while a lesser qualified white employee with less seniority was allowed to stay on the night shift, and that this was done in retaliation because she had filed an internal grievance. See Defendant's Exhibit H.

       The Defendant asserts that, as Plaintiff was not discharged until May 2010, to the extent the claims asserted in this lawsuit include or encompass Plaintiff's discharge, any such claim is barred from consideration by this Court, as that was not a claim asserted in the administrative charge. Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]; Evans v. Techs Applications & Service Co., 80 F.3d 954, 962-963 (4th Cir. 1996)["The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint"]; Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992) ["Procedural requirements...for gaining access to the ...courts are not to be disregarded by courts out of a vague sympathy for particular litigants"], vacated on other grounds, 113 S.Ct. 1940 (1993). However, although not part of her original administrative charge, Plaintiff alleges in her Complaint that her later discharge was a result of the "harsh and harassing treatment" she received and as retaliation for her having engaged in protected activity, and the Defendant does not dispute that the agency did not conclude its review and issue the right to sue letter until July 27, 2010, two months *after* Plaintiff's discharge. Under such circumstances, it is proper to consider Plaintiff's discharge



from employment as part of her claim. <u>Chacko v. Patuxent Institution</u>, 429 F.3d 505, 509 (4th Cir. 2005)[Claims which, although exceeding the scope of the EEOC charge, would naturally have arisen from the investigation thereof, are not procedurally barred];[6] <u>Jones v. Calvert Group, Ltd.</u>, 551 F.3d 297, 301-304 (4th Cir. 2009)[Finding Plaintiff's claims for age, sex, and race discrimination should be dismissed for lack of subject matter jurisdiction because they were not pursued in Plaintiff's second administrative charge (and her first charge was no longer timely), but allowing Plaintiff to pursue a retaliation claim for her termination which occurred subsequent to her second charge since her second charge was timely and properly before the Court]; <u>Anderson v. Block</u>, 807 F.2d 145, 148 (8th Cir. 1986)["When an employee seeks judicial relief for incidents not listed in [her] original [administrative] charge * * *, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the [administrative] charge, including new acts occurring during the pendency of the charge.'] (quoting <u>Oubichon v. North Am. Rockwell Corp.</u>, 482 F.2d 569, 571 (9th Cir. 1973)); <u>Currie v. Arthur</u>, No. 11-892, 2012 WL 1354081 at *10 (E.D.Va. Apr. 18, 2012) ["A Title VII lawsuit may extend to 'any kind of discrimination like or related to the allegations during the pendency of the case before the Commission.'"] (quoting <u>Brown v. Runyon</u>, 139 F.3d 888 (4th Cir. 1998)).

Defendant also asserts that, to the extent Plaintiff's discrimination claims are being asserted under the South Carolina Human Affairs Law (SCHAL), her claims are subject to dismissal because Plaintiff failed to file her complaint within one year of the violations alleged. S.C. Code

---

[6]The Defendant has submitted no evidence to show that the administrative agency did not consider the fact that Plaintiff was discharged prior to concluding its investigation as part of its administrative review of Plaintiff's discrimination claim. <u>Temkin</u>, 945 F.2d at 718 [Moving party has the burden of showing that summary judgment is appropriate].



Ann. § 1-13-90(d)(6) [part of SCHAL] requires that an action brought pursuant to that Statute "be brought within one year from the date of the violation alleged, or within one hundred twenty days from the date the Complainant's charge is dismissed, *whichever occurs earlier, . . . .*" (emphasis added). Defendant argues that since Plaintiff's charge of discrimination alleges that the violations of which Plaintiff complains all occurred on or before April 8, 2009, and she did not file this lawsuit until October 25, 2010 (over a year later), her SCHAL claims are time barred.

   With respect to the specific claims set forth by Plaintiff in her administrative charge of discrimination, the undersigned agrees that those claims are time barred and cannot be asserted under SCHAL. Chambers v. Medical University Hospital Authority, No. 11-261, 2011 WL 2559605 at * 2 (D.S.C. June 28, 2011)(citing S.C.Code Ann. § 1-13-90(d)(6)); Whitten v. Fred's Incorporation, 601 F.3d 231, 238-239 (4th Cir. 2010)[discussing statute's requirement to file within one (1) year of the date of the violation or within one hundred and twenty (120) days from the date the complainant's charge with SCHAC is dismissed, and finding that one (1) year from date of violation controlled where EEOC, rather than SCHAC, issued dismissal letter, with the earlier date applicable to a SCHA dismissal]. However, with respect to her discharge, Plaintiff clearly filed her lawsuit within one year of that event, as well as within one hundred twenty (120) days of the dismissal of her administrative charge. Therefore, Plaintiff may assert her discharge claim pursuant to SCHAL as well as pursuant to the applicable federal statutes.[7]

---

[7]The Defendant had previously filed a Rule 12 motion to dismiss with respect to Plaintiff's assertion of her claims under SCHAL. That motion was denied based on the allegations of the Complaint. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)[A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level]; cf. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure
(continued...)



Finally, Defendant asserts that Plaintiff's claims under the ADA/FMLA and ADEA are barred by sovereign immunity. After review and consideration of the applicable case law, the undersigned is constrained to agree with the Defendant that ADA/FMLA and ADEA claims seeking monetary damages against state agencies are barred in federal court by the Eleventh Amendment to the United States Constitution.[8] Coleman v. Court of Appeals of Maryland, 132 S.Ct. 1327, 1333-1337 (2012)[FMLA]; Tennessee v. Lane, 541 U.S. 509, 521-522 (2004)[ADA]; Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 374 (2001)[ADA]; Kimel v. Florida Board of Regents, 528 U.S. 62, 91 (2000)[ADEA]. There is no dispute that the Defendant is a state agency. See S.C. Code § 59-123-60 [establishing Medical University Hospital Authority as a separate state entity]. Hence, even assuming that Plaintiff has otherwise set forth a factually proper and timely ADA/FMLA and/or ADEA damages claim, these claims may not be pursued against this Defendant in this United States District Court. Therefore, Plaintiff's age and disability claims and causes of action should be dismissed.

---

[7](...continued)

to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, the submission of appropriate evidence by the Defendant in support of its Rule 56 motion for summary judgment now shows that the Defendant is entitled to summary judgment with respect to Plaintiff's assertion of claims under SCHAL, except with respect to Plaintiff's discharge claim as indicated hereinabove.

[8]Plaintiff's FMLA claim, to the extent one has been properly asserted, is a self-care provision claim. 29 U.S.C. § 2612(a)(1)(D). As such, a damages claim against this state agency Defendant is prohibited. However, damages claims, even against state agency Defendants, have been upheld under the family-care provision of the FMLA. 29 U.S.C. § 2612(a)(1)(c); see Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721 (2003); Coleman, 132 S.Ct. at 1338 (J. Thomas, concurring).



## II.

### (Claims Asserted Under 42 U.S.C. § 1981)

In her response in opposition to the Defendant's motion for summary judgment, while affirmatively stating that she is not abandoning any of her causes of action, Plaintiff only addresses three issues. First, Plaintiff argues that a genuine issue of material fact exists as to whether she was discriminated against in violation of § 1981. Second, Plaintiff argues that a genuine issue of material fact exists as to whether the Defendant created a hostile work environment. Third, Plaintiff argues that a genuine issue of material fact exists as to whether the Defendant discriminated against her because of her race.

With respect to Plaintiff's argument concerning claims she is asserting under § 1981, however, that statutory basis for her claims has already been dismissed by Order of the Court filed June 28, 2011. See Court Docket No. 33; see also Court Docket No. 27. Therefore, Plaintiff's arguments with respect to the assertion of her claims under § 1981 are without merit, and do not need to be further considered by the Court.

## III.

### (Remaining Disparate Treatment Discrimination Claims)

Plaintiff contends that the Defendant discriminated against her in violation of Title VII on the basis of her race, gender, and religion, alleging in her Complaint that Maughan made negative and disparaging comments to her about her religious beliefs, that she was unfairly disciplined because of her race and was improperly removed from her job which was then given to a less qualified white male, and that she was subjected to demeaning comments intended to denigrate female workers. This claim requires proof of intentional discrimination, either by direct evidence or



by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[9]

Plaintiff has not offered any direct evidence of discrimination,[10] and the Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of the complained of employment actions occurred because of her race, gender, or religion under the <u>McDonnell Douglas</u> proof scheme to survive summary judgment. The undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing disparate treatment discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory

---

[9]Although <u>McDonnell Douglas</u> is a Title VII case, to the extent Plaintiff's discrimination claims encompass her discharge, which is also being asserted under SCHAL, the standards applicable for lawsuits under SCHAL are basically the same as the standards applicable to lawsuits under Title VII. See <u>Orr v. Clyburn</u>, 290 S.E.2d 804, 806 (S.C.1982); <u>Tyndall v. National Education Centers</u>, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); <u>cf.</u> <u>Cromer v. Greenwood Com'n of Public Works</u>, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.] Therefore, the analysis set forth hereinabove with respect to Plaintiff's discharge claim under Title VII also applies to Plaintiff's claim under the South Carolina Human Affairs Law.

[10]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); see <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).



reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race/gender/religion. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, that she was replaced [in the case of a discharge claim] by someone from outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); Adams v. The Trustees of UNC-Wilmington, 640 F.3d 550, 557 (4th Cir. 2011). Plaintiff is a member of a protected class (African American, female, and a practicing Christian); however, Defendant contests (depending on the particular claim) some or all of the remaining prongs of the prima facie case.



16

**2008**. Putting aside for the moment the issue of Plaintiff's discharge, none of the events involving Maughan of which Plaintiff complains occurred until 2008. See generally, Plaintiff's Deposition, pp. 55-56, 59-61, 64-70.[11] In early January 2008, Plaintiff was out on leave for a medical condition. Plaintiff testified that at some point during that period of time Maughan was asking co-workers as well as her pastor for her phone number, which she found objectionable. Plaintiff's Deposition, pp. 75-77. However, there is no indication in this testimony that Maughan ever made any comments to anyone about Plaintiff being a woman, about her race, or about her religion. Id., pp. 77-78. In fact, when asked what *any* of Maughan's activities had to do with her being a woman, her race, or her religion, Plaintiff responded: "That's not what I was saying. I was saying about being harassed and aggravated, not about those issues." Id., pp. 78-79. Plaintiff also specifically acknowledged that none of Maughan's conduct towards her through January 2008 had anything to do with her race, gender, or religion. Id., pp. 82-83.

Plaintiff also testified to events that occurred in June and July of 2008 involving Maughan relating to her taking time off. Plaintiff testified that on June 24, 2008 she had a doctor's excuse to be off, and Maughan told her that if she took time off she would have to work another shift, presumably to make up for the time that she was off. Plaintiff testified that she ended up going ahead and working her regular schedule and not taking any sick time off. Id., pp. 99-100. However, when

---

[11]In considering this matter, the undersigned has primarily relied on the evidentiary citations referenced by the parties in their briefs. Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's claims on summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md. 1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir. 1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997). However, in light of Plaintiff's pro se status, the undersigned has also generally reviewed the deposition testimony and other submitted evidentiary exhibits to see if a genuine issue of fact is presented with respect to any of Plaintiff's claims.



Plaintiff was then posed the question: "[Y]ou're not contending that that had anything to do with your race, your religion, or your sex . . . , right?", Plaintiff responded "Right". Id., p. 100.

Then, in July 2008, there was apparently an incident where someone had drawn something inappropriate on a chalk board, which Plaintiff testified Maughan thought was inappropriate and erased. Id., pp. 90-91. Plaintiff testified that Maughan erased this drawing (or had it erased) because it looked like "a man's part", which Plaintiff thought was a crude comment. Id., pp. 91-94. Nothing else came of this event, however, and Plaintiff testified that there were no other events involving Maughan in 2008. Id., p. 100.

Based on this evidence, the undersigned does not find that Plaintiff has established a genuine issue of fact either that she was subjected to an adverse employment action or that there is any evidence giving rise to an inference of unlawful discrimination by the Defendant through 2008. Plaintiff has therefore failed to establish a prima facie case of disparate treatment race, gender, or religious discrimination for that period of time.

**2009**. Turning to 2009, Maughan attests that Plaintiff was notified in 2008 that she, as well as all other employees, were required to comply with the applicable policies related to lunch periods and overtime. Defendant's Exhibit D [Maughan Affidavit]; see also attachment A to Maughan Affidavit [email dated September 29, 2008]. Maughan held a staff meeting concerning these changes (for which the email was a follow-up), although Maughan is unclear whether Plaintiff attended that staff meeting. Maughan Affidavit, ¶ ¶ 7-8; Exhibit A to Maughan Affidavit [email reading, in part; "For those of you who could not attend the last staff meeting I wanted to provide the notes"]. Plaintiff testified that she was not at the meeting and also did not read the email, and was therefore unaware of this policy requirement until Maughan spoke to her personally on or about



18

January 23, 2009. Plaintiff's Deposition, pp. 101-105, 149; Maughan Affidavit, Exhibit C. Plaintiff had worked overtime during the interim, for which she had requested payment. Although Plaintiff was initially told that she would not be paid for work time covered by the lunch/dinner break of her shift that she had worked, it is undisputed that Plaintiff did subsequently receive all the pay to which she was entitled. See Maughan Affidavit; Plaintiff's Deposition, p. 103. Further, while Plaintiff complains that Maughan also took a log book utilized by employees to log their time, Plaintiff testified that access to this log book was denied to all employees, not just herself. Id., pp. 104-105. The undersigned again can discern no adverse employment action as a result of this incident, nor any evidence giving rise to an inference of unlawful discrimination. Therefore, this incident also fails to support the establishment of a prima facie case of disparate treatment discrimination.[12]

In February 2009 Plaintiff received an employee evaluation in which Plaintiff received a "Meets" expectations score. Defendant's Exhibit F, p. 10. This was actually a slightly higher rating than Plaintiff had received in her previous annual evaluation. Cf. Defendant's Exhibit C, p. 10. However, Plaintiff testified that she believed Maughan had written negative things on the evaluation, although she could not remember what they were. Plaintiff's Deposition, p. 164. The following month, Plaintiff received a written Disciplinary Report because of her failure to follow the lunch and overtime policy previously discussed. Plaintiff's Deposition, pp. 137-138. See also Maughan Affidavit, ¶ 11 and attached Exhibit C [Disciplinary Report]. While Plaintiff did not lose any benefits or pay as a result of this Disciplinary Report; Plaintiff's Deposition, p. 137; she wrote

---

[12]Plaintiff did complain to the Defendant's Human Resource office on or about January 20, 2009 about Maughan's conduct. See Defendant's Exhibit E. This Human Resource's complaint is discussed as part of Plaintiff's retaliation claim, infra.



on the Report that she did not agree with its issuance, and that Maughan had "given [her] problems since 12-2007 & continued to do so". Maughan Affidavit, Exhibit C.

To support a discriminatory animus with respect to this claim, Plaintiff alleges in her Complaint, and alleged in her administrative charge, that Maughan failed to notify her about the change in the "no break" policy by providing her with a hard copy of this instruction, even though he knew that her work schedule did not permit her time to check emails. However, at her deposition, Plaintiff admitted that she did have an email account with the Defendant, that it was part of her job duties to check that account for email messages that might pertain to her work, and that Maughan had sent out the email concerning the "no break" policy (which applied to everyone) back in September 2008. Plaintiff's Deposition, pp. 149-150. Nevertheless, from October 2008 through January 2009, Plaintiff submitted over thirty pay requests for having worked during lunch without obtaining prior approval, as required by the policy. Despite these work hours being in violation of policy, Plaintiff was paid for all of this time. Plaintiff's Deposition, p. 103; Maughan Affidavit, and attached Exhibit C. No discriminatory animus is evident in this evidence.

As further support for her claim that Maughan issued the Disciplinary Report because he was discriminating against her, Plaintiff identified four individuals who she believed received more favorable treatment because they were not written up for putting in time for working lunch breaks, while she was. However, two of these individuals are female, like the Plaintiff; and all four are Christians, like the Plaintiff. Therefore, none of this testimony by the Plaintiff establishes a genuine issue of fact as to whether Plaintiff received disparate treatment based on her gender or religion. With respect to race, three of these other individuals were white, while one was a Filipino. However, Plaintiff also testified that she had never seen the personnel files of any of these four



20

individuals, and did not know the particulars of their individual situations. Rather, Plaintiff simply

testified that they all had told her that they had never received any write-ups. Plaintiff's Deposition,

pp. 138-145. This is not competent evidence on which to find disparate treatment. Further, when

asked if she knew whether or not these other employees had received prior permission to not take a

lunch break, as provided for and allowed by the policy, before doing so (assuming that these

employees did in fact work through a lunch period), Plaintiff testified that she did not know whether

these other employees had complied with the policy prior to not taking a lunch break. Plaintiff's

Deposition, p. 145.

      None of this testimony or evidence is sufficient to create a genuine issue of fact as

to whether Plaintiff having received a disciplinary warning for working through lunch breaks without

obtaining prior permission, as required by corporate policy, was because of her race. Boden v. U.S.

Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and

conclusory statements that he had been discriminated against are not sufficient to raise reasonable

inference of unlawful discrimination]; Gairola v. Virginia Dep't of General Services, 753 F.2d 1281,

1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the

plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result

of discrimination...."]; Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000)[affirming the grant

of summary judgment to the employer where the employee did not "show that...[the] problems were

racial in nature"]; Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2

(D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude

the granting of a summary judgment motion]. Therefore, Plaintiff's March 2009 Disciplinary Report

fails to support establishment of Plaintiff's prima facie case.



21

With respect to Plaintiff's transfer from the night shift to the day shift, Plaintiff alleges that there was no legitimate reason for this transfer, that it was part of Maughan's discriminatory animus towards her, and that after she was involuntarily transferred a lesser qualified white employee with less seniority, Joe Gardner, was allowed to stay on the night shift.[13] Defendant's Exhibit H; see also Plaintiff's Deposition, pp. 153-154. As support for her assertion that Gardner was a less qualified employee, Plaintiff testified that he had not worked for the Defendant as long as she had, that she knew how to make "certain drugs" and Gardner did not (although she did not identify what those drugs were), and that she was "certified", while Gardner was not. Plaintiff's Deposition, pp. 154-155. However, even assuming for purposes of summary judgment that Maughan did allow a white employee to work the night shift while Plaintiff was transferred, that fact alone does not establish a prima facie case of race discrimination, as Plaintiff has still failed to present any evidence to show that she was meeting her employer's expectations or performing her job satisfactorily.

Maughan attests that Plaintiff was transferred to the day shift because her performance was insufficient in several respects; because she was unable to complete her assigned tasks without working through her lunch/dinner break, while other employees could; and that an unreasonable amount of work was being shifted to the shift pharmacist when Plaintiff was working. See Maughan Affidavit, with attached Exhibit E [Memorandum to Plaintiff setting for the reasons for her transfer]. The Defendant has also submitted other evidence showing that Plaintiff was not adequately performing her job. Maughan Affidavit, attached Exhibits B, C and E. Plaintiff has

---

[13]Plaintiff also alleged in her administrative charge that this transfer was done in retaliation for her having filed an internal grievance on January 20, 2009. Defendant's Exhibit E; See also Plaintiff's Deposition, pp. 156. That allegation is discussed separately in the retaliation section of this opinion, infra.



presented no evidence to counter these exhibits. With respect to following the policy requiring prior approval before working through a lunch/dinner break, Plaintiff conceded in her deposition that she had not obtained the required approval from either Maughan or Scott Loveland, the Defendant's Operations Coordinator, prior to working through these shifts and then requesting payment for the time worked. Plaintiff's Deposition, pp. 151-153. Plaintiff has also offered no evidence to dispute the other performance deficiencies set forth by Maughan in his affidavit or in the Defendant's other exhibits. Therefore, Plaintiff has failed to submit evidence sufficient to give rise to a genuine issue of fact as to whether she was performing her job to her employer's expectations. Cf. Beall v. Abbott Labs, 130 F.3d 614, 619 (4th Cir. 1997)[In considering whether a claimant was adequately performing their job, it is the perception of the decision maker which is relevant, not the self assessment of the claimant]; Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997)[inquiry centers upon the employer's beliefs, and not the employee's own perception of [her] performance]; King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003)[On a motion for summary judgment, a Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [the Plaintiff] was meeting [the employer's] expectations."]. Therefore, Plaintiff has failed to establish this prong of her prima facie case with respect to her claim involving having been transferred to the day shift.

Additionally, even if the Court were to assume for purposes of summary judgment that the evidence was sufficient to create a genuine issue of fact with respect to her prima facie case involving her shift transfer, the Defendant has set forth legitimate, non-discriminatory reasons for this employment action; see EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]; and Plaintiff has failed to present any evidence to show pretext in her shift



23

transfer. In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to discriminate against her because of her race, she would not have been subjected to the employment action at issue. EEOC, 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [racial animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present any such evidence.

First, as previously discussed, Plaintiff has failed to present any evidence to show that the employment deficiencies noted in the Defendant's evidence and exhibits that were the basis for her transfer are not accurate. Further, while it is readily apparent that Plaintiff did not like Maughan and the way he treated her; see Maughan Affidavit, attached Exhibits B and C; Plaintiff has provided no evidence to show that Maughan had any racial animus against her (the only remaining basis on which this claim is assertable). See Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no "adverse employment action" where evidence failed to establish any more than bad relations between plaintiff and her supervisor]. When asked at her deposition whether she had ever heard Maughan at any time make a comment about somebody's race, she responded: "I'll say no, because I don't want to be lying or anything." Plaintiff's Deposition, p. 169. A few moments later, Plaintiff was again asked: "Sitting here today, to your recollection, did you ever hear Mr. Maughan make any comments about somebody's race . . . . ?", to which Plaintiff responded: "I - I'll just say no." Plaintiff's Deposition, p. 172. Hence, no evidence of a racial motive or animus has been



24

demonstrated with respect to this issue. Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].

   In order to proceed on this claim, Plaintiff must present evidence sufficient to give rise to a genuine issue of fact that her transfer from the night shift to the day shift was based on race discrimination, not because the Defendant made a mistake (assuming the evidence showed any such mistake), treated her unfairly, or was simply incorrect in its findings or decisions concerning Plaintiff's employment. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); cf. Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]. Therefore, Plaintiff's claim that she was transferred to the day shift because of her race is without merit.



25

In sum, in her administrative charge of discrimination filed May 5, 2009, Plaintiff did not allege any discriminatory behavior activity after April 8, 2009, and based on the foregoing analysis of the evidence submitted in this case, the undersigned finds that Plaintiff has failed to create a genuine issue of fact sufficient to survive summary judgment with respect to any of her claims of disparate treatment discrimination through that date. Rucker, No. 10-1533, 2012 WL 951789, * 2 [Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion]. Therefore, the Defendant is entitled to summary judgment on these claims. Boden, 978 F.Supp. at 659 [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; Gairola, 753 F.2d 1281, n. 4 [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [her] disfavorable treatment was the result of discrimination...."]; Hawkins, 203 F.3d at 281[affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)[A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].

## II.

### (Retaliation Claim)

Plaintiff's retaliation claim is based on Plaintiff's allegation that she was retaliated against by the Defendant, including being discharged, because she engaged in protected activity by

complaining about discriminatory treatment. Section 704(a) of Title VII,[14] 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

---

[14]Plaintiff's retaliation discharge claim is also being asserted under the South Carolina Human Affairs Law. See Discussion and n. 9, supra.

27



With respect to Plaintiff's prima facie case, while it is undisputed that Plaintiff engaged in protected activity in January 2009 when she filed a written complaint about Maughan's treatment of her, that filing did not reference Plaintiff's race, gender or religion as being a basis for her complaint. Defendant's Exhibit E.[15] The evidence shows that Plaintiff also personally complained to Maughan in January 2009 about his treatment of her, but again the document memorializing this event does not reference Plaintiff's race, gender or religion. Maughan Affidavit, Exhibit B. Therefore, these events do not constitute protected activity for purposes of a retaliation claim based on Plaintiff having complained of race, gender or religious discrimination. Sullivan, 197 F.3d at 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].

However, on April 29,2009, Plaintiff complained about Maughan to the Defendant's Human Resources Director, and on May 5, 2009 Plaintiff followed up that complaint by filing a Compliance Report with the Defendant in which she asserted that Maughan did not treat female employees "respectfully and fairly", and that Maughan was "retaliating against her". Defendant's Exhibit G. This Compliance Report did not mention any discrimination based on religion, and with respect to race, Plaintiff did not indicate that race had played any role in Maughan's conduct, as she specifically stated that Maughan had "something against women, both 'black and white'". Defendant's Exhibit G, p. 2. However, on that same date, May 5, 2009, Plaintiff also filed her charge of discrimination with SCHAC and the EEOC, in which she complained of, inter alia, race, gender and religious discrimination. Defendant's Exhibit H. Thus, these events from April and May 2009

---

[15]While Plaintiff does reference her medical condition and the FMLA in this filing, the undersigned has already determined that Plaintiff cannot pursue a damages claim based on the FMLA or the ADA in this lawsuit.

constitute protected activity for purposes of Plaintiff's race, gender and religious based retaliation claims.

However, to establish her prima facie case, Plaintiff still must present evidence to show that the Defendant took an adverse action against her, and that a causal connection exists between her protected activity and this adverse action. Plaintiff has failed to present any such evidence. The only alleged "adverse action", as that term is defined in the applicable case law,[16] to have occurred after Plaintiff engaged in her protected activity on or around May 1, 2009, was her subsequent discharge from employment, as the Defendant correctly notes that Plaintiff never alleged in her charge, or any amendments thereto, that Maughan or anyone else with the Defendant engaged in any discriminatory behavior or activity against her after April 8, 2009, nor is the Court aware of any other activity (other than Plaintiff's discharge from employment) that the Defendant is alleged to have engaged in after that date that would have been investigated as part of the administrative agency's investigation of Plaintiff's retaliation claim. Baber, 977 F.2d at 874-875 [Once a moving party presents evidence that judgment on the pleadings is appropriate, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial].[17]

---

[16]"Adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"] Lybarger v. Gates, No. 10-373, 2012 WL 1095915 at * 11 (N.D.Ohio Mar. 30, 2012). (internal citations omitted); Ainsworth v. Loudon County School Bd., ___ F.Supp.2d ___, 2012 WL 913633 (E.D.Va. 2012)["Adverse employment actions are those that negatively impact the terms, conditions, or benefits of employment, . . . ., termination being the quintessential example . . . ."].

[17]To the extent Plaintiff contends that her discharge is part of her hostile work environment claim, that claim is discussed separately herein, infra.



29

Turning then to an examination of the facts surrounding Plaintiff's discharge, the Defendant contends that this event does not even qualify as an adverse employment action because Plaintiff was not in fact discharged. Rather, Plaintiff took disability retirement because of her medical condition. Boyd v. Department of Transportation, 21 Fed. Appx. 906, 909 (1st Cir. 2001) ["[A]n employee's decision to retire is presumed to be voluntary."] [MSPB case]; Johnson v. Runyon, 137 F.3d 1081, 1082 (8th Cir. 1998)[Plaintiff failed to demonstrate adverse employment action because he voluntarily retired, not because he was compelled to do so]; see also Clark v. Whirlpool Corp., 252 F.Supp. 2d 528, 539 (N.D.Ohio 2003)[no adverse action where Defendant granted every medical leave and accommodation Plaintiff asked for, and when she could no longer work, she voluntarily retired]. To support this argument, the Defendant has submitted evidence showing that Plaintiff was absent from work beginning in late 2009 due to health problems, and that in December 2009 the Operations Coordinator at the pharmacy, Brett Crisp, requested that Plaintiff clarify her limitations/restrictions by having her physician complete an Employee Physical Ability Assessment Form by no later than January 11, 2010. Defendant's Exhibit I; see also Plaintiff's Deposition, pp. 231-232. When Plaintiff failed to do so, Maughan sent her a follow-up letter on March 31, 2010 advising her that she needed to have a Functional Capacity Examination completed and information provided by no later than April 16, 2010. This letter further reminded Plaintiff that she was also to have a physician provide an FMLA re-certification, which she needed to return to the Defendant by no later than April 16, 2010 to maintain her employment. Defendant's Exhibit J. Plaintiff then underwent a Functional Capacity Evaluation by a physician in late April 2010, which determined that she was not functionally capable of meeting the demands of the position of a pharmacist technician. Defendant's Exhibit J. Plaintiff then applied for disability retirement through



30

the South Carolina Retirement System on April 23, 2010. <u>Defendant's Exhibit L</u>. Defendant's Exhibit L is a Notice of Retirement Eligibility from the South Carolina Retirement Systems, which includes an application signed by the Plaintiff in which she states that her disability has prevented her from working since February 16, 2010. <u>Defendant's Exhibit L</u>. Further, at her deposition Plaintiff conceded that she was disabled and not able to work, and that in fact, in addition to her state retirement, she had also applied for disability benefits from the Social Security Administration. <u>Plaintiff's Deposition</u>, pp. 203-209. When asked, based on the fact that she retired because she was disabled, how she was now claiming that she was wrongfully discharged, Plaintiff's only answer was "Because of the way it was done". <u>Plaintiff's Deposition</u>, p . 207.

Based on this evidence, the undersigned does not find that a genuine issue of fact exists as to whether Plaintiff's discharge was an adverse employment action, as the evidence clearly shows that she retired on disability after she had been out on medical leave for an extended period, a Functional Capacity Assessment showed that she could no longer perform her job, and Plaintiff herself had applied for disability retirement, representing to the state agency (and subsequently to the Social Security Administration) that she was completely disabled and no longer able to work. Further, even assuming this event *could* be construed as an adverse employment action, Plaintiff has submitted no evidence whatsoever to show a causal connection between her having engaged in protected activity and her retirement. <u>Cecilino v. Allstate Ins. Co.</u>, 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']; <u>Rucker</u>, 10-1533, 2012 WL 951789 *2 [Conclusory allegation or denials, without more, are insufficient to preclude the granting of a summary judgment motion].



31

Therefore, Plaintiff's retaliation claim is without merit and should be dismissed.

## III.

## (Title VII Hostile Work Environment Claim)

To avoid summary judgment on her hostile work environment claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her race/gender/religion; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012). Plaintiff argues in her brief that her supervisor, Maughan, created a hostile work environment through statements indicating a general hostility to the presence of women in the workplace and by treating her with contempt and disrespect, citing to pages 170-171, 183-184, and 186 of her deposition.

On pages 170-171 of her deposition, Plaintiff testified that, when employee LaToya Bryant was out on sick leave, Maughan made the statement that "males don't have to get out on sick leave [because of] having babies and things like that . . . .". Plaintiff also testified that on another occasion, when a female employee (Lisa Tucker) was putting on her makeup at the office, Maughan stated "I thought this is supposed to be a pharmacy and not a studio or a beauty salon". Plaintiff also



32

related an incident where someone had drawn or written something like "males forever" on a posterboard. However, she did not know who wrote that comment on the posterboard. <u>Plaintiff's Deposition</u>, pp. 170-171. When asked by the defense counsel as a follow-up (since the comments Plaintiff had cited all dealt with gender) whether Plaintiff had ever heard Maughan make any comments about somebody's race or religion, Plaintiff responded "I'll just say no." <u>Plaintiff's Deposition</u>, p. 172. Later on in her testimony, when Plaintiff was asked whether there was anything hostile that Maughan had done that she had not already talked about, Plaintiff stated that on one occasion, when she had apparently finished a report or someone had finished a report, Maughan stated that he did not know who had "made this or what it was made out of, but I want you to do it over . . . and he threw it at me . . . .". When asked if Maughan was trying to hit her, Plaintiff said no, he just "threw it, I mean, you know, just . . . here do it over." <u>Plaintiff's Deposition</u>, 183-184. Plaintiff also testified that, on another occasion, when it was time for her to leave, Maughan had her correct some drug placements before she left, when he could have just let the morning crew do it. Plaintiff testified that happened, she believed, sometime in July 2008. <u>Plaintiff's Deposition</u>, pp. 185-186.

After careful review and consideration of Plaintiff's testimony in conjunction with the applicable standards for evaluating a Title VII hostile work environment claim, the undersigned does not find that the evidence presented in this case is sufficient to give rise to a genuine issue of fact as to whether Plaintiff was subjected to a hostile work environment. First, there is no evidence that race or religion had anything to do with the events to which Plaintiff testified. Further, even assuming Plaintiff's testimony, considered in the light most favorable to her, establishes that she was subjected to unwelcome conduct in a work related setting and that that conduct was based on her gender,



33

nothing in the evidence shows sufficiently severe or pervasive gender based or hostile behavior to create an abusive work environment as that term is defined by the applicable case law. The Defendant correctly notes that Plaintiff has not presented any evidence to show that Maughan ever made sexually explicit comments, jokes, or remarks to her, ever improperly touched her or made any overt sexual propositions, or even made any reference to her gender during any of these events. The two incidents where Plaintiff describes Maughan giving her work to do or requiring her to do work, while she may not have liked it, are hardly unheard of in an employer/employee relationship. See Bolden, 43 F.3d at 551 ["general harassment if not [based on a protected criteria] is not actionable"]; Sullivan, 197 F.3d at 815 [Without a showing that the reasons for his alleged mistreatment were discriminatory, Plaintiff cannot establish a prima facie case for relief]. As for the two incidents where Plaintiff testified Maughan made a reference to women needing to take more time off or that he thought it was inappropriate for women to be applying their makeup at work, even if these two isolated comments (assumed to be true for purposes of summary judgment) were boorish or inappropriate, such conduct does not establish a hostile work environment claim. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Court dismissed claim of hostile work environment where Plaintiff only alleged limited, isolated incidents of inappropriate conduct]; see also Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."].

 Therefore, Plaintiff's hostile work environment claim should be dismissed.



## IV.

### (Breach of Contract Claim)

Plaintiff's final claim is that she had a contract of employment with the Defendant, which included a requirement that the Defendant provide equal employment opportunity to employees and a mandatory progressive disciplinary procedure, and that the Defendant violated this contract when she was terminated from her job.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Motion for summary judgment on a claim for breach of a contract of employment, a Plaintiff must present "sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011) [Rule 12 motion case] ["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment'].

Here, it is clear from Plaintiff's allegations that she had no formal employment contract with the Defendant. Rather, Plaintiff alleges that a contract was created by virtue of



mandatory terms and conditions set forth in the Defendant's employee handbook. Plaintiff is correct that an employer can alter an employee's at will status through mandatory language in a handbook. Cf. Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C.Ct.App. 2006). However, while Plaintiff conclusorily alleges that she had an employee handbook that created an enforceable contract of employment with the Defendant, she has not submitted a copy of any handbook as an exhibit in this case, nor does she reference any of the elements necessary to plead and prove a handbook claim. In fact, she makes no reference to any specific language in the alleged handbook at all for the court to even evaluate her claim.[18] Therefore, this claim should be dismissed. Karges v. Charleston County Sheriff's Office, No. 08-2163, 2010 WL 1303455 at * 10 (D.S.C. Mar. 5, 2010)[Recommending dismissal on summary judgment where Plaintiff asserted that a handbook altered his employment-at-will status, but failed to introduce the handbook or reference any evidence to establish the necessary elements of a handbook claim], adopted by, 2010 WL 1409435 (D.S.C. Mar. 31, 2010); House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed.**

---

[18]In her deposition when asked what provision of the employee handbook formed a contract, Plaintiff responded, "See, I don't - - I don't really know." See Plaintiff's Deposition, p. 211.



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

May **15**, 2012
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

