# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| Heline Chambers, | ) Civil Action No. 2:11-cv-261-RMG |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| Medical University Hospital Authority, | ) |
| Defendant. | ) |

In this action, Plaintiff, a former employee of Defendant, asserts claims pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Age Discrimination in Employment Act (ADEA), the provisions of 42 U.S.C. § 1981,[1] and state law. Plaintiff is proceeding *pro se* in this action. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e) and (g) DSC, this matter was automatically referred to the United States Magistrate Judge for all pretrial proceedings. On January 31, 2012, Defendant filed a motion for summary judgment as to all of Plaintiff's claims. (Dkt. No. 66). On April 16, 2012, Plaintiff filed a response in opposition (Dkt. No. 76), and on May 3, 2012, Defendant filed a reply (Dkt. No. 82). On May 15, 2012, the Magistrate Judge issued a Report and Recommendation recommending that the Court grant Defendant's motion for summary judgment and dismiss this case. (Dkt. No. 84). On June 1, 2012, Plaintiff filed objections to the Report and Recommendation (Dkt. No. 87), and on June 18, 2012, Defendant filed a reply to those objections (Dkt. No. 48). After carefully considering

---

[1] On June 28, 2011, the Court issued an order dismissing Plaintiff's claim pursuant to 42 U.S.C. § 1981. (Dkt. No. 33).

1

the record, the relevant law, and the Report and Recommendation, the Court hereby adopts the Report and Recommendation as the order of this Court, grants Defendant's motion for summary judgment, and dismisses Plaintiff's complaint with prejudice.

## I. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* Where a party fails to file any specific objections, the Magistrate Judge's conclusions are reviewed only for clear error, *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

## II. Summary Judgment Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat. Red Cross*,

101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Rule 56 provides in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

### III. Analysis

#### a. Plaintiff's Allegations and Factual Background

In her verified complaint,[2] Plaintiff alleges that she began working for the Defendant in August of 1996. Plaintiff alleges that she is a Christian, African American female over the age

---

[2] Plaintiff filed a verified complaint in this action. (Dkt. No. 1-1). Verified complaints by *pro se* litigants are treated as affidavits and may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *See Williams v. Griffin*, 952 F.2d

3

of forty who has certain disabilities. In 2006, Plaintiff was working as a pharmacy technician for Defendant and was assigned a new supervisor, Matthew Maughan. Plaintiff alleges that, starting around 2008, she had certain negative experiences at work because of Mr. Maughan and was ultimately terminated by Mr. Maughan. Further, Plaintiff alleges that these negative experiences and wrongful termination constitute discrimination based on Plaintiff's race, gender, age, religion, and disabled status. The first negative experience which allegedly occurred was in 2008 when Plaintiff was out on leave for a medical condition, and Mr. Maughan allegedly asked Plaintiff's co-workers as well as Plaintiff's pastor for Plaintiff's phone number, which Plaintiff found objectionable. Plaintiff also alleges that in June of 2008 she asked for time off for a health issue and that Mr. Maughan told her that, if she took time off, she would have to take another shift on a different day. Also, Plaintiff testified that Mr. Maughan made certain comments which she felt were insensitive to women, such as saying that "males don't have to get out on sick leave [because of] having babies and things like that," with regard to a co-worker who was out on sick leave. (Dkt. No. 66-3 at 45). Plaintiff also testified that a co-worker was putting on makeup in the office, and Mr. Maughan stated: "I thought this is supposed to be a pharmacy and not a studio or a beauty salon." (*Id.*).

Also, Plaintiff and Mr. Maughan had several disagreements about Plaintiff working through lunch breaks without Mr. Maughan's permission and then requesting overtime pay for the additional time worked. Plaintiff alleges that, in September of 2008, Mr. Maughan communicated the new policy regarding working through lunch breaks – a policy which required

---

820, 823 (4th Cir. 1991). Plaintiff did not submit any exhibits in opposition to Defendant's motion for summary judgment. Rather, Plaintiff relies entirely on her verified complaint and her deposition testimony. While the Court provides a brief synopsis of the factual background herein, the Report and Recommendation provides a more detailed discussion. (*See* Dkt. No. 84 at 2-8).

employees to get permission from Mr. Maughan or another supervisor before working through a lunch break in order to get paid for that time – during a staff meeting which she could not attend and through an email which she never read.[3] Thus, Plaintiff alleges that she was unaware of the new policy until Mr. Maughan spoke to her about it personally in January of 2009. Plaintiff alleges that she worked overtime in between the time the policy changed in September of 2008 and the time she was informed of the change in January of 2009. Plaintiff was initially told that she would not be paid for the overtime work during this time period, and Plaintiff filed a complaint with Defendant regarding this issue and certain other issues on January 20, 2009. (Dkt. No. 66-7).[4] However, Plaintiff admits that she was eventually paid for all of the time that she worked during this period. (Dkt. No. 66-3 at 28). In March of 2009, Plaintiff received a disciplinary report regarding her failure to follow the new policy regarding lunch breaks. (Dkt. No. 66-6). Plaintiff alleges that four other employees who worked through their lunch breaks on occasion did not get written up like Plaintiff did. (Dkt. No. 66-3 at 37-38). Plaintiff, however, testified that she was not sure whether these other employees received permission to work through their lunch breaks, pursuant to the policy. (*Id.*).

In April of 2009, Mr. Maughan notified Plaintiff that she was being moved from the night shift to the day shift effective April 27, 2009. Plaintiff alleges that a less qualified, white male employee, Joe Gardner, was permitted to stay on the night shift after Plaintiff was transferred to the day shift. (Dkt. No. 66-3 at 40-41). Mr. Maughan has submitted an affidavit stating that he moved Plaintiff to the day shift because he wanted Plaintiff to be more closely supervised in light of certain specific deficiencies in Plaintiff's job performance. (Dkt. No. 66-6 at 4). On May 5,

---

[3] Plaintiff concedes that she was responsible for reading her work emails, but she testified that she rarely had time to read them. (Dkt. No. 66-3 at 39).
[4] In this complaint, Plaintiff did not claim that any of her issues at work were attributable to discrimination based on her race, gender, age, or religion.

2009, Plaintiff filed a compliance report with Defendant, alleging that Mr. Maughan had retaliated against her and that he "does not treat female employees respectfully and fairly." (Dkt. No. 66-9). Also on May 5, 2009, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission, alleging discrimination on the basis of race, gender, age, disability, and religion. (Dkt. No. 66-10). On May 7, 2009, Mr. Maughan and Mr. Scott Loveland sent a joint memorandum to Plaintiff addressing her work performance over the past several months, her move from the night shift to the day shift, and the procedure for reporting any complaints that Plaintiff had about her employment. (Dkt. No. 66-6 at 16).

Plaintiff continued working for Defendant through late 2009, at which point Plaintiff started missing work due to health problems. In December of 2009, the Operations Coordinator for Defendant's pharmacy sent a letter to Plaintiff requesting that she have a physician complete an Employee Physical Ability Assessment Form to help clarify Plaintiff's work limitations. (Dkt. No. 66-11). When Plaintiff failed to do this, Mr. Maughan sent Plaintiff a follow-up letter on March 31, 2010, stating that Plaintiff needed to have the assessment form completed by April 16, 2010. (Dkt. No. 66-12). On April 16, 2010, Plaintiff received a Functional Capacity Evaluation from a physician which concluded that Plaintiff was not functionally capable of meeting the demands of the position of pharmacist technician. (Dkt. No. 66-13).[5] On April 23, 2010, Plaintiff filled out and signed a Disability Retirement Application which stated that Plaintiff's disability had prevented her from working since February 16, 2010. (Dkt. No. 66-14). On August 27, 2010, the South Carolina Retirement Systems provided Plaintiff with a notice approving Plaintiff's claim for disability retirement. (*Id.*). Further, at Plaintiff's deposition, she

---

[5] The evaluation states that Plaintiff was unable to lift certain objects or walk continuously without taking a break.

6

admitted that she was disabled and not able to work and had applied for disability benefits from the Social Security Administration, in addition to her application for disability benefits with the South Carolina Retirement Systems. (Dkt. No. 66-3 at 53-54). Notwithstanding these facts, Plaintiff alleged in her complaint that she was "terminated" from her job in 2010. When asked how she could claim that she was terminated while, at the same time, representing that she was disabled and unable to work, Plaintiff simply answered, "Because of the way it was done." (Dkt. No. 66-3 at 54).

### b. Application of Law

The Court has carefully reviewed the Report and Recommendation of the Magistrate Judge, and the Court agrees that Defendant is entitled to summary judgment on each of Plaintiff's claims for the reasons set forth in the Report and Recommendation. First, as explained in the Report and Recommendation, Defendant is entitled to summary judgment on Plaintiff's claims seeking monetary damages against Defendant under the ADA, the FMLA, and the ADEA. Defendant is a state agency, *see* S.C. Code Ann. § 59-123-60, and claims seeking monetary damages against state agencies pursuant to each of these Acts are barred in federal court by the Eleventh Amendment to the Constitution. *See Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1333-37 (2012); *Tennessee v. Lane*, 541 U.S. 509, 521-22 (2004); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 91 (2000).

With regard to Plaintiff's disparate treatment claim, Plaintiff has failed to establish a prima facie case of race, age, gender, or religious discrimination, which is the first step in

establishing a disparate treatment claim pursuant to the *McDonnell Douglas* framework.[6] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234-35 (4th Cir. 1991). In order to establish a prima facie case of discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, that she was replaced (in the case of a discharge claim) by someone from outside of her protected class, or that there is some other evidence giving rise to an inference of unlawful discrimination. *See Austen v. HCA Health Servs. of Virginia, Inc.*, 5 Fed. Appx. 253 (4th Cir. 2001); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995).

In the case *sub judice*, as explained further in the Report and Recommendation, Plaintiff cannot establish that she was performing her job satisfactorily, because the only evidence in the record regarding Plaintiff's performance is the evidence submitted by Defendant showing certain problems with Plaintiff's performance, which Defendant asserts it addressed through the allegedly adverse employment actions. Further, even if Plaintiff could establish a prima facie case for discrimination, Defendant has provided non-discriminatory reasons for the only actions taken with regard to Plaintiff which were even arguably adverse – i.e., giving Plaintiff a disciplinary report and memorandum concerning her performance, and transferring Plaintiff from the night shift to the day shift. Plaintiff has not created a genuine issue of material fact as to whether any of Defendant's asserted non-discriminatory reasons for taking these actions were pretextual. *See E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992) (holding that where an employer defendant provides a non-discriminatory reason for taking an adverse

---

[6] Plaintiff has not offered any direct evidence of discrimination. Thus, the Plaintiff must rely on the *McDonnell Douglas* framework.

employment action, the employee plaintiff "must demonstrate by a preponderance of the evidence that defendant's reasons were a pretext for discrimination"). Plaintiff cannot rely on her "termination" as an adverse employment action because, as explained above, Plaintiff clearly was not terminated but retired based on a disability.

Next, with regard to Plaintiff's retaliation claim, the Court agrees with the Magistrate Judge's finding that Defendant is entitled to summary judgment. As explained in the Report and Recommendation, the only protected activity in which Plaintiff engaged was the filing of a charge of discrimination with the SCHAC and the EEOC in May of 2009. The only adverse employment action which Plaintiff identifies after this protected activity is her "termination." But, as explained above, Plaintiff clearly was not terminated.

With regard to Plaintiff's hostile work environment claim, the Court agrees with the Magistrate Judge's finding that Defendant is entitled to summary judgment. As explained in the Report and Recommendation, Plaintiff has alleged, at most, a few isolated incidents where her supervisor made insensitive remarks. Even assuming that all of the incidents identified by Plaintiff occurred, and construing the facts in a light most favorable to Plaintiff, the Court finds that this alleged conduct was not sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.").

With regard to Plaintiff's breach of contract claim, the Court agrees with the Magistrate Judge finding that Defendant is entitled to summary judgment. Plaintiff has not provided any evidence creating a genuine issue of material fact as to whether Plaintiff's employment was anything other than at-will. *Prescott v. Farmer's Tel. Co-Op., Inc.*, 516 S.E.2d 923, 927, n.8 (S.C. 1999) (holding that in South Carolina there is a presumption of at-will employment).

Finally, the Court has reviewed Plaintiff's objections to the Report and Recommendation. In her objections, Plaintiff argues that the Magistrate Judge "deviated from the summary judgment standard by requiring [Plaintiff] to prove pretext." (Dkt. No. 87 at 3). The Court has reviewed the Magistrate Judge's Report and Recommendation and finds that the Magistrate Judge applied the proper standard with regard to pretext. Not only has Plaintiff failed to *prove* that Defendant's asserted reasons for taking the arguably adverse employment actions were pretextual, but Plaintiff has failed to create even a genuine issue of material fact as to this issue. Further, the Court finds that Plaintiff's remaining objections simply rehash arguments previously made by Plaintiff in opposition to Defendant's motion for summary judgment and addressed in the Report and Recommendation.

## Conclusion

For the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation as the order of this Court. Accordingly, Defendant's motion for summary judgment is granted, and Plaintiff's complaint is dismissed with prejudice.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 13 2012
Charleston, South Carolina